Roberto Serrano SANCHEZ, et
al, Plaintiffs,

v.

PUERTO RICO MARINE MANAGE-
MENT, INC. and Union De Trabaja-
dores De Muelles Y Ramas Anexas De
San Juan, Puerto Rico, Local 1740
UTM–ILA, Defendants,

Civ. No. 82–2419 GG.

United States District Court,
D. Puerto Rico.

Aug. 22, 1984.

---

788

Vincent M. Rotolo, Victor Sotomayor Clavell, Santurce, P.R., for plaintiffs.

Rafael Cuevas Kuinlam and Rafael Medina Zerpa, Hato Rey, P.R., for P.R. Marine Mgt. Inc.

Ada Pérez Alfonso, San Juan, P.R., for Local 1740, UTM–ILA.

## OPINION AND ORDER

GIERBOLINI, District Judge.

This is an action brought under Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a),[1] and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, requesting monies owed to them and damages against defendants for alleged violations of collective bargaining agreements and breach of statutory duty of fair union representation.

Plaintiffs are all former employees of defendant Puerto Rico Marine Management, Inc.'s (P.R.M.M.I.) dock and terminal located in Isla Grande and members of defendant Unión de Trabajadores de Muelles y Ramas Anexas de San Juan, Puerto Rico, Local 1740 UTM–ILA (Local 1740). P.R.M.M.I. is a shipping agent engaged in interstate commerce; Local 1740 is a labor organization also engaged in interstate commerce. Jurisdiction is based under 28 U.S.C. §§ 1331 and 1337.[2]

Both defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. In the alternative, they move for summary judgment in their favor. Plaintiffs have opposed said motions.

## I

**A. Claims against co-defendant Local 1740.**

According to the complaint, on November 1, 1981 plaintiffs complained to Local 1740 that P.R.M.M.I. and the Administrator of the UTM–PRSSA Welfare Plan owed them certain employee benefits under the collective bargaining contracts. Thereafter, on February 1982, plaintiffs submitted documentary proof to support their allegations. Nonetheless, on May 26, 1982 Local 1740 notified plaintiffs that it refused to process plaintiffs' claims. The Union allegedly began a campaign to force plaintiffs and other employees to withdraw their claims. Furthermore, during the month of June 1982, P.R.M.M.I. announced the closing of its dock and terminal in Isla Grande. Negotiations were then commenced between defendants to settle the terms of the termination of operations. As a result of such negotiations, P.R.M.M.I. paid all employees a lump sum final payment covering separation pay and other monies owed to

---

**1.** Although the National Labor Relations Act does not expressly provide for any private cause of action, the Supreme Court has interpreted Section 9(a) to impliedly grant employees of employers engaged in interstate commerce a private right to sue their union for unfair union representation. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

**2.** Section 1331 provides:
The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Section 1337 provides in pertinent part:
(a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints monopolies: Provided, however, That the district courts shall have original jurisdiction of an action brought under section 11707 of title 49, only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs.

the employees. Defendants allegedly forced the employees to sign a document stating that the payment was a final compensation for all monies owed to them. Those who refused to sign would not receive their checks. Consequently, all employees, plaintiffs included, signed the document. Additionally, on July 29, and on August 5, 1982, Local 1740 purportedly "required and caused defendant P.R.M.M.I. to deny employment" to seventeen Isla Grande employees who refused to withdraw their claims against their employer. The discharged employees were given a final payment of all monies owed to them on August 17, 1982. A deduction from the final payment was made for the benefit of Local 1740. Consequently, plaintiffs received less compensation than that to which they were originally entitled. Plaintiffs thus charge that Local 1740 violated its "duty to fairly and honestly handle and process their claims and grievances against P.R.M.M.I."

Plaintiffs further bring a pendent state law claim that Local 1740 conspired with P.R.M.M.I. to unlawfully deprive plaintiffs of their right to receive the "correct amount of salaries, benefits, other fees, and payments they were entitled to receive under the collective bargaining contracts" negotiated for the period between October 11, 1974 and August 18, 1982.

### B. *Claims against P.R.M.M.I.*

In addition to the aforementioned charge of civil conspiracy which also includes P.R.M.M.I., plaintiffs claim that co-defendant P.R.M.M.I. violated their contractual rights under Articles XII and XIII of the collective bargaining contracts during 1974 through 1982. It is alleged that by the terms of Articles XII and XIII P.R.M.M.I. obligated itself to pay plaintiffs a Christmas bonus and a royalty fee in December of each year computed on the basis of the number of hours worked by each employee during the year. Co-defendant Local 1740

was to open a special bank account to effectuate the payments. Nonetheless, P.R.M.M.I. allegedly deposited the monies earned by plaintiffs and other Isla Grande employees in a trust fund administered by the trustees of an employee welfare plan known as the UTM–PRSSA Welfare Plan. As a result of said arrangement, plaintiff received less Christmas bonus and royalty fee payments than those to which they were entitled, and thus they now seek to recover the difference.

Plaintiffs further claim that P.R.M.M.I. violated Article IV of the collective bargaining agreements by making deductions from plaintiffs' salaries for their unpaid union dues. Under the terms of Article IV P.R.M.M.I. agreed not to deduct any amount from plaintiffs' salaries for union dues unless authorized by plaintiffs. They aver that they never gave said authorization, and that they repeatedly objected to said deductions.[3] P.R.M.M.I. rejected all of plaintiffs' claims on July 28, 1982.

Finally, plaintiffs bring a state law claim stemming from the same aforementioned allegations requesting that all monies owed to them be returned as well as the penalty provided by Law 114 of 1979.

## II

### A. *Defendants' claims.*

Co-defendant P.R.M.M.I. alleges first that plaintiffs have failed to exhaust their contractual remedies as provided in the collective bargaining agreements. Secondly, both defendants claim that the recent decision of the United States Supreme Court in *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) bars all of plaintiffs' claims which antedate six months of its filing on October 6, 1982. Finally, they aver that any surviving claim is barred by the doctrine of *res judicata*. Because the statute of limitations issue is dispositive of

---

**3.** Plaintiffs also alleged that they received less monies than they were entitled to during the 1974–82 period in their sick leave and vacation payments. This claim was voluntarily dismissed at a hearing held on January 20, 1984.

most of plaintiffs' claims, we shall address it first.

### 1. *Statute of Limitations—Retroactive Application of Del Costello.*

In *Del Costello*, the Supreme Court decided that a six-month statute of limitations applied to suits brought by an employee against his employer for breach of a collective bargaining agreement and against his union for breach of its duty of fair representation. Previously, the Court in *United Parcel Services, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981) had decided that suits by an employee against his employer were governed by a state's statute of limitations for vacation of an arbitration award or by an analogous state statute. However, *Mitchell* left open the question of which statute would cover employee suits against a union. Noting the importance of having a uniform statute of limitations, the Court in *Del Costello* found that the six-month period of Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), should govern claims by an employee against either the employer or the union.

The Court reasoned that the short state limitations periods for vacating arbitration awards failed to provide the aggrieved employee with a satisfactory opportunity to vindicate his rights under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 and the fair representation doctrine. In contrast, Section 10(b)'s six-month period for filing unfair labor practice charges reflected a proper balance between the competing interests of according prompt resolution to labor disputes and of providing an employee with a reasonable period of time to file suit. *See Derwin v. General Dynamics Corporation*, 719 F.2d 484 (1st Cir.1983).

█ Thus, it is clear that for actions which accrued after *Del Costello* the appropriate limitations period is six months. However, whether *Del Costello* applies retroactively to this case is the issue now at hand.

We begin our analysis by noting that our task has been recently simplified by the United States Court of Appeals for the First Circuit's holding in *Graves v. Smith's Transfer Corporation et al*, 736 F.2d 819 (1st Cir.1984) that *Del Costello* applied retroactively. In concluding that retroactivity was warranted the court applied the three-factor litmus test enunciated in *Chevron Oil Company v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). In addition, it imparted particular weight to the precedent set by the Second, Third, Fourth, Fifth, Seventh, Eighth, and Eleventh Circuits which had already decided that *Del Costello* should be applied retroactively.

Similarly, we will also briefly undertake the *Chevron* analysis. The first factor that must be determined is whether the decision establishes a "new principle of law, either by overruling clear past precedent, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Chevron*, 404 U.S. at 106, 92 S.Ct. at 355. As was the case in *Graves*, plaintiff here argues that *Del Costello* abruptly overruled reliable precedent of a one year statute of limitations for actions against the union and a fifteen-year period for suits against the employer established by *De Arroyo v. Sindicato de Trabajadores Packing, AFL–CIO*, 425 F.2d 281 (1st Cir.1970).[4] However, "*Del Costello* was not a clear break from prior law and notice of a shorter period being applicable was given in *Mitchell*." *Graves*, at 821, *quoting from Lincoln v. District 9 of International Association of Machinists and Aerospace Workers*, 723 F.2d 627, 630 (8th Cir.1983).

The second factor to be weighed is whether retroactive application "will further or retard" the operation of the rule in question. Giving retroactive effect to *Del Costello* will further the purpose of the rule which is based on the need for uni-

---

**4.** Although in *De Arroyo* the court expressly rejected the possible application of the six-month limitation period of Section 10(b) to a

Section 301 suit, language to that effect was merely dictum, and its validity was cast into doubt by *Mitchell.*

formity, on providing at the same time an opportunity for the employee to vindicate his rights, and on accomplishing relatively final resolution of labor disputes. *Graves*, at 821. *See Edwards v. Sea-Land Service, Inc.*, 720 F.2d 857, 861–62 (5th Cir.1983); *Rogers v. Lockheed-Georgia Company*, 720 F.2d 1247, 1249 (11th Cir.1983), *reh'g denied*, 727 F.2d 1116 (11th Cir.1984).

The third and final *Chevron* factor is whether substantial inequity results from retroactive operation. Our inquiry focuses on how far advanced the preparations on the merits of the case are. *See Graves*, at 822. The bottom line is whether plaintiffs have been deprived of a judgment obtained before *Del Costello* was decided. As the court noted in *Graves*, the two circuits which have refused to apply *Del Costello* retroactively have done so in instances where judgment had been entered. *Pitts v. Frito-Lay, Inc.*, 700 F.2d 330 (6th Cir.1983); *Edwards v. Teamsters Local Union No. 36*, 719 F.2d 1036 (9th Cir.1983), *cert. denied*, ─── U.S. ───, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). Although in this case, unlike *Graves*, there has been some pretrial discovery and preparation on the merits evidenced by the extensive memoranda filed in support and in opposition of the motion to dismiss, no judgment has been obtained. Therefore, no substantial inequity would result from imposing the six-month limitations period.

We find that none of the *Chevron* factors have been met, and thus we apply *Del Costello* retroactively.

 To determine when a Section 10(b) period begins to run, we must look to when plaintiffs either were or should have been aware of the injury itself. *Farr v. H.K. Porter Co., Inc.*, 727 F.2d 502, 505 (5th Cir.1984). As to the union, plaintiffs first filed their claims with Local 1740 on November 1, 1981. Further complaints ensued all throughout the months of February, March, April and May. The union rejected their claims on May 26, 1982. That denial is then the first indication that Local 1740 would not process their complaints. It constitutes thus the earliest point in time in which the union arguably breached its duty to fairly represent plaintiffs. Subsequent union actions only confirmed what the initial refusal disclosed. Therefore, plaintiffs knew or should have known of their injury on May 26, 1981. Making the appropriate computations, we conclude that the claims against Local 1740 are not time barred by Section 10(b). The filing of the complaint on October 6, 1982 is clearly within six months of May 26, 1982.

 Furthermore, plaintiffs' claims against P.R.M.M.I. encompass a period of time from 1974 through 1982. The Christmas bonus and royalty payments were to be received during the month of December of each year. Any violations of the collective bargaining agreements regarding those payments therefore should have been noticed then. Plaintiffs knew or should have known of their injury on December of each year. Clearly, then these claims are time barred. The filing of complaint being on October 6, 1982 was well beyond the applicable six months statute of limitations.

Similarly, plaintiffs' allegations of illegal deduction of union dues from their salaries occurring prior to April 6, 1982 are precluded. In contrast, the deductions from the final payments and settlements made during the months of June, July and August, 1982, which fall within the six-month period before the filing of the complaint on October 6, 1982, are not barred.

### 2. Res Judicata and the decision of the National Labor Relations Board.

The only remaining federal claim against P.R.M.M.I. is for unlawful deduction of union dues from the final lump sum payments. P.R.M.M.I. contends that a decision of a regional director of the National Labor Relations Board (the Board) rendered by letter dated November 5, 1982 concluding that P.R.M.M.I.'s conduct did not violate the National Labor Relations Act and thus refusing to issue a complaint constitutes *res judicata.*

 Nonetheless, a conclusion of a regional director of the Board that an unfair

labor practice complaint should not issue is not an adjudication which would give rise to collateral estoppel. *Thomas v. Ford Motor Company*, 396 F.Supp. 52 (D.Mich. 1973), *aff'd*, 516 F.2d 902 (6th Cir.1975), *cert. denied*, 421 U.S. 988, 95 S.Ct. 1991, 44 L.Ed.2d 478 (1975). The legal rights and liabilities at issue in a Section 301 suit are distinct from those involved in proceedings before the Board. Each represents a different cause of action, and a decision in one type of suit cannot constitute *res judicata* as to other. Therefore, the determination of the Board does not preclude plaintiffs from asserting their claim in this case.

### 3. *Res Judicata and the decision of the San Juan Superior Court.*

We turn next to co-defendant Local 1740's contention that plaintiffs unfair representation claim against it is barred by the doctrine of *res judicata*.

On January 10, 1979 plaintiffs filed a complaint in the Superior Court of Puerto Rico, San Juan Part against Local 1740. The complaint in that case sought the payment of sick leave benefits, Christmas bonuses and royalties owed to plaintiffs for the period of 1974 through 1979. After trial on the merits, the court concluded that the defendant channeled all employer contributions for the ends agreed and set forth in the trust agreement, complying thus with its obligation to the plaintiffs. Consequently, the court dismissed plaintiffs' complaint. Plaintiffs sought a writ of certiorari from the Supreme Court of Puerto Rico which was denied on August 14, 1980. The state court judgment is thus final and firm.

■ It is well settled law that all United States courts must afford "the same full-faith-and-credit to state court judgments that would apply in the state's own courts." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262, *reh'g denied*, 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982); 28 U.S.C. § 1738. Thus, the standard to be applied is whether Puerto Rico courts would give the judgment of the San Juan

Superior Court preclusive effect. If they do, we must also; if they do not, we cannot. *See General Foods v. Mass. Dept. of Public Health*, 648 F.2d 784, 785–86 (1st Cir.1981); *Nesglo, Inc. v. Chase*, 562 F.Supp. 1029 (D.P.R.), *aff'd mem.*, No. 81–1097 (1st Cir.1983).

Under Puerto Rico law, "in order that the presumption of *res judicata* may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the objects, causes, persons of the litigants, and their capacity as such." 31 L.P.R.A. § 3343. The Supreme Court of Puerto Rico has defined object as the matter over which the action is being exercised, and cause as the basis or origin of the actions raised and adjudged. *Lausell Marxuach v. Diaz de Yañez*, 103 D.P.R. 533, 536–37 (1975).

■ Applying the aforementioned principles to the facts of this case, we find the argument of *res judicata* is without merit. The suit filed in the San Juan Superior Court sought the payment of monies allegedly owed to plaintiffs during 1974 thru 1979. The action now before us charges defendant Local 1740 with breach of its duty to fairly represent its members, and colluding with co-defendant P.R.M.M.I. against plaintiffs during 1981 through 1982. They are separate and distinct actions grounded on different factual and legal bases. The required identity of object and cause between the state court judgment and the suit herein is lacking.

Finally we note that none of the additional grounds alleged by defendants to defeat plaintiffs' case, namely failure to exhaust administrative remedies and the doctrine of collateral estoppel, bar any of the surviving claims against them.

Because we dismiss plaintiffs' federal claim of monies owed to them under the Christmas bonus and royalty benefits provision of the collective bargaining agreement, we must similarly dismiss their pendent state law claim which arises from the

**794**

same operative facts requesting the penalty imposed by Law 114.

As to the second pendent state law claim, the parties have not briefed or argued the timeliness and sufficiency of the civil conspiracy allegations against both defendants, and hence we do not consider it today.

In view of the above, Local 1740's motion to dismiss and/or summary judgment is hereby denied. P.R.M.M.I.'s motion is granted in part, denied in part.

The clerk shall enter judgment in accordance with this Opinion and Order.

SO ORDERED.