**HEALTHCARE RESOURCES CORP., Plaintiff,**

v.

**DISTRICT 1199C, NATIONAL UNION OF HOSPITAL AND HEALTH CARE EMPLOYEES, AFSCME, AFL–CIO, et al., Defendants.**

**No. 94–CV–6989.**

United States District Court,
E.D. Pennsylvania.

March 6, 1995.

J. Michael McGuire, Shawe & Rosenthal, Baltimore, MD, Ira C. Gubernick, Genesis Health Ventures, Kennett Square, PA, for plaintiff.

Gail Lopez–Henriquez, Freedman and Lorry, P.C., Philadelphia, PA, for defendants.

*MEMORANDUM AND ORDER*

JOYNER, District Judge.

This matter is before the Court today on motion of the defendants, which seek an award of summary judgment as to the plaintiff's complaint. For the reasons that follow, the defendants' motion will be denied.[1]

## I. BACKGROUND

There is no dispute as to the facts in this case. The plaintiff is Healthcare Resources Corporation ("HRC"), a Pennsylvania company that operates the Homestead Nursing and Rehabilitation Center in Willow Grove, Pennsylvania. The defendants, labor organizations that represented HRC employees at various times relevant to the lawsuit, are District 1199C, National Union of Hospital and Health Care Employees, AFSCME, AFL–CIO ("District 1199C") and National Union of Hospital and Health Care Employees, AFSCME, AFL–CIO (the "National Union"), collectively referenced as the "Union."

In November of 1989, District 1199C was certified as the bargaining representative for certain HRC employees. Negotiations for a collective bargaining agreement between HRC and District 1199C commenced in January of 1990 and continued, with considerable acrimony,[2] until an agreement was finally reached on July 11, 1994. Pursuant to the National Union's constitution, the agreement could not be signed on behalf of the National Union until the agreement had been submitted to the employees for ratification. The agreement was signed by the District 1199C representative and HRC, but it was neither signed by the National Union nor submitted to the employees for ratification.

Meanwhile, on July 21, 1994, an HRC employee named Michelle Sawyer filed a petition to decertify the Union with the National Labor Relations Board ("NLRB"), pursuant to section 9(c) of the National Labor Rela-

---

1. Plaintiff has also submitted a request for oral argument on this motion, which, in light of our disposition, will be denied.

2. Twice during the course of the negotiations, District 1199C filed unfair labor practice charges with the National Labor Relations Board

("NLRB") alleging that HRC was negotiating in bad faith. After a hearing, an administrative law judge ("ALJ") issued a decision concluding that HRC had violated the Act and ordering HRC to bargain in good faith. The NLRB subsequently affirmed the ALJ's decision.

tions Act (the "Act"), 29 U.S.C. § 159(c).[3] The Union asserted that the petition was barred by the collective bargaining agreement, which provided that the Union would be the sole and exclusive collective bargaining representative. HRC and the petitioner argued that the agreement did not bar the petition because it was invalid, in that it had not been signed by the National Union and had not been ratified by the employees.

A representation hearing was held, and briefs were submitted by both HRC and District 1199C. Subsequently, on October 7, 1994, the Regional Director of Region 4 of the NLRB issued a Decision and Order finding that there was a binding contract between HRC and the Union. The Regional Director concluded that District 1199C's representative had actual and apparent authority to sign the contract on the National Union's behalf. Moreover, the Regional Director held the contract to be valid even though it had not been ratified by the employees because the contract itself made no reference to employee ratification. As a result, the petition for decertification was dismissed. The NLRB later denied HRC's Request for Review as well as its Request for Reconsideration.

On October 21, 1994, Ms. Sawyer submitted a petition in which 105 of the 150 employees indicated that they no longer wanted to be represented by the Union. As a result, on October 24, HRC notified District 1199C that it was withdrawing recognition from the Union. District 1199C countered by filing with the NLRB various unfair labor practice charges, including the claim that the withdrawal of recognition of the Union constituted a violation of the National Labor Relations Act. A hearing before an Administrative Law Judge is to occur in the near future.

On November 17, 1994, HRC filed the instant action, in which it seeks a declaration that the collective bargaining agreement between the parties is invalid. In its motion for summary judgment, the Union makes two arguments relating to the extent to which this Court may properly review the issues presented by the declaratory judgment action. The first argument is jurisdictional, in which the Union contends that the federal labor law preemption doctrine compels the Court to defer to the NLRB. Second, the Union argues that principles of issue preclusion prevent the Court from examining the issue of the validity of the collective bargaining agreement. For its part, HRC asserts that the Decision and Order issued by the NLRB's regional director does not carry a preclusive effect, and that this Court does not lack jurisdiction over the subject matter raised in HRC's complaint. With this background and the parties' positions in mind, we turn to the merit of the arguments.

## II. DISCUSSION

### A. The Summary Judgment Standard

This Court is authorized to award summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the Court's responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510). Further, the non-moving party

---

**3.** Section 9(c) provides, in pertinent part, as follows:

(c)(1) Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—
　(A) by an employee ... alleging that a substantial number of employees ... (ii) assert that the individual or labor union, which has been certified ... as the bargaining repre-

sentative, is no longer a representative as defined in subchapter (a) of this section ... the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice....
29 U.S.C. § 159(c) (1982).

cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). Boiled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512. In this case, the facts are not in dispute; we are called upon to resolve legal questions involving the scope of our jurisdiction and the preclusive effect of the Decision and Order of the Regional Director. As a result, we consider here whether the Union is entitled to judgment as a matter of law.

### B. *Jurisdiction*

■ The Union first argues that this Court must defer to the primary jurisdiction of the NLRB. Thus, our initial task is to determine whether we may properly consider the validity of the collective bargaining agreement. Under the preemption doctrine in labor law, state and federal courts must defer to the exclusive jurisdiction of the NLRB if an activity is arguably subject to section 7 or 8 of the Act, 29 U.S.C. § 157 or § 158. *International Longshoremen's Assoc. v. Davis,* 476 U.S. 380, 381, 106 S.Ct. 1904, 1907, 90 L.Ed.2d 389 (1986) (citing *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959)). HRC contends that since the above-captioned action is one for a declaratory judgment and is independent of the proceedings before the NLRB, the district court may properly consider the issues in the case pursuant the exception to the preemption doctrine crafted by the Congress in section 301(a) of the Labor Management Relations Act, which provides as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1982).

■ The Third Circuit Court of Appeals confronted a similar set of circumstances in *Mack Trucks, Inc. v. International Union, UAW,* 856 F.2d 579 (3d Cir.1988), *cert. denied,* 489 U.S. 1054, 109 S.Ct. 1316, 103 L.Ed.2d 585 (1989). In that case, the employer filed suit in the district court seeking a declaration as to the validity and enforceability of a collective bargaining agreement. The union argued that section 301(a) allowed the district court to adjudicate disputes arising from a collective bargaining agreement, but not to resolve a controversy over whether such an agreement existed. The Third Circuit rejected this argument, however, and held that a labor case is within the concurrent jurisdiction of the NLRB and the district court to the extent that the case involves an unfair labor practice also covered by section 301(a). *Id.* at 585. Moreover, the Third Circuit concluded that "§ 301(a) confers jurisdiction on a district court to determine the existence of a collective bargaining agreement." *Id.* at 590; *see Service Employees Int'l Union, Local 82 v. Pritchard Indus., Inc.,* 827 F.Supp. 35, 36 (D.D.C.1993) ("The Union is only asking for a ruling on the narrow issue of whether an agreement exists. The Court has jurisdiction over such disputes arising under § 301(a)."). In view of this clear precedent, we conclude that we may properly examine the issue of the validity of the collective bargaining agreement pursuant to our section 301(a) jurisdiction. Accordingly, we must reject the Union's jurisdictional argument.

### C. *Issue Preclusion*

The Union further contends that the October 7 Decision and Order, in which the Regional Director held that a binding and valid agreement existed, precludes HRC from relitigating the issue. Its argument is based on *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), in which the Supreme Court noted that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it

736

which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *Id.* at 422, 86 S.Ct. at 1560 (citations omitted). Thus, subsequent federal court decisions have held that an NLRB unfair labor practice proceeding has a preclusive effect as to fact and law in later actions. *Pygatt v. Painters' Local No. 277, Int'l Brotherhood of Painters & Allied Trades,* 763 F.Supp. 1301, 1307 (D.N.J.1991) (citing, *inter alia, Consolidated Express, Inc. v. New York Shipping Ass'n, Inc.,* 602 F.2d 494, 503–06 (3d Cir. 1979), *vacated on other grounds,* 448 U.S. 902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980), *on remand,* 641 F.2d 90 (3d Cir.1981); *Jaden Elec. v. International Brotherhood of Elec. Workers,* 508 F.Supp. 983, 988 (D.N.J.1981)).

■ Not all administrative proceedings have a preclusive effect on subsequent litigation, however. Issue preclusion applies only when the administrative agency acts in a judicial capacity. *Utah Construction,* 384 U.S. at 422, 86 S.Ct. at 1560; *Durko v. OI–NEG TV Prods., Inc.,* 870 F.Supp. 1278, 1281 (M.D.Pa.1994). HRC contends that *Utah Construction* and its progeny do not govern the instant case because the Regional Director, in conducting the representation hearing and issuing the Decision and Order, was not acting in a judicial capacity. HRC notes that the rule emerging from the *Utah Construction* line of cases is based upon a adversary hearing before an administrative law judge, while the representation hearing pertinent here was a nonadversary proceeding before a regional director acting in an investigative capacity.

■ An agency acts in its judicial capacity when it provides for (1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examination and cross-examination at the hearing, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law. *Durko,* 870 F.Supp. at 1281 (citing *Reed v. AMAX Coal Co.,* 971 F.2d 1295, 1300 (7th Cir.1992)). Upon review of the foregoing indicia of judicial action, it is clear that the Regional Director cannot be said to have acted in a judicial

capacity in presiding over the representation proceeding. The nature of the hearing is described in the regulations that govern the proceeding. Thus, the representation hearing is part of the investigation into the facts surrounding the representation issue; as such, it "is nonadversary in character." 29 C.F.R. § 101.20 (1994). Accordingly, we conclude that the representation proceeding does not constitute agency action in a judicial capacity, and as a result, we hold that the conclusion reached by the Regional Director does not have a preclusive effect over the instant proceeding. Defendants' motion for summary judgment under this theory will therefore be denied.

## III. CONCLUSION

The Union has argued that we must award it summary judgment because of the exclusive jurisdiction of the NLRB in this matter. Further, the Union has contended that the preclusive effect of the Regional Director's Decision and Order requires us to award it summary judgement. Since we have concluded that neither argument possesses merit, we must deny the Union's motion.

An appropriate order follows.

### ORDER

AND NOW, this 6th day of March, 1995, upon consideration of Defendants' Motion for Summary Judgment, and the response thereto, it is hereby ORDERED, for reasons set forth in the preceding memorandum, that said Motion is DENIED.