Darlene **BAKER**, Plaintiff,

v.

**DETROIT RIVERVIEW HOSPITAL and Detroit–Macomb Hospital Corporation, Defendants.**

Civ. A. No. 92–76052.

United States District Court, E.D. Michigan, S.D.

Oct. 5, 1993.

Howard Yale Lederman, Southfield, MI, for plaintiff.

Donald A. Van Suilichem, Valarie L. MacFarlane, Bloomfield Hills, MI, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Defendant Detroit–Macomb Hospital Corporation (the "Hospital") terminated plaintiff Darlene Baker as an employee on February 28, 1991. On October 13, 1992, plaintiff brought this "hybrid" claim under section 301 of the Labor Management Relations Act, 29 U.S.C. section 185(a), seeking reinstatement and damages.[1] Before the court is defendants' motion for summary judgment on all claims. For the reasons discussed below, the court will grant defendants' motion.

### I. Background Facts

Plaintiff worked as a data entry operator in the Hospital from 1973 until February 28, 1991. During that period, plaintiff was a member of the American Federation of State, County, and Municipal Employees, AFSCME, Michigan Council 25, Local 2435 (the "Union"), and was elected to the position of union steward in 1985.

The Hospital discharged plaintiff on February 28, 1991 for her alleged violation of its attendance policy. The collective bargaining agreement (the "CBA") between the Hospital and the Union provided that an employee could be terminated after an absence from three consecutive working days without proper notification of a supervisor.

The Union immediately filed a grievance with the Hospital on plaintiff's behalf on

---

1. Plaintiff now abandons her claims that defendants violated the National Labor Relations Act, were negligent in hiring and supervision, and breached the collective bargaining agreement under state law. Plaintiff now concedes that these claims are no longer viable or are preempted. As a result, the court will only address her section 301 claim.

March 1, 1991. The CBA dictated a five-step grievance procedure. In order to expedite disciplinary discharge grievances, however, the CBA provided for a special procedure to resolve such claims. The relevant CBA provision reads as follows:

If the grievance is not resolved at Step 4, either party may give notice to the other party of its intent to arbitrate such grievance. Such notice shall be given within fourteen (14) calendar days ... of the receipt of the Hospital's Step 4 answer. Arbitration demands shall be filed in one of the following ways:

(1) Grievances involving layoff, recall from layoff, discharge or disciplinary suspension shall be processed through an expedited procedure. These grievances shall be heard by an Arbitrator drawn from a preselected list of five (5) mutually agreed upon names....

(a) Upon filing a demand for arbitration, it shall be submitted to an arbitrator selected on a rotation basis from the jointly agreed upon list....

Ever since the language was first adopted, the Union and the Hospital have repeatedly clashed over the interpretation of this provision. The Union claims that the clause merely provides that the party requesting arbitration may, but is not required to, notify the arbitrator when demanding arbitration. The Hospital, however, has asserted that within fourteen days of the Hospital's Step 4 answer, the Union must also notify and present the grievance to the preselected arbitrator. The Union has consistently maintained its position on this issue in grievances that occurred before, during, and after the incident giving rise to this lawsuit.

On March 15, 1991, the Union received the Hospital's Step 4 response. On March 29, 1991, the director of human resources for the Hospital and the Union's chief steward agreed to extend the arbitration demand deadline to April 1, 1991. The Union then demanded arbitration on April 1, 1991. The arbitrator was notified by the Union on June 4, 1991.

The Hospital then informed the Union and the arbitrator that it considered plaintiff's grievance settled because the Union's notification of the arbitrator was untimely. On several occasions, the Union had withdrawn grievances after the Hospital denied arbitration because of the Union's insistence on following its own interpretation of the arbitration procedures. In the plaintiff's case, however, the Union pressed forward with her grievance, demanding arbitration.

In an apparent effort to force arbitration, the Union decided to file an unfair labor practice charge. On June 12, 1991, the Union mistakenly filed the charge on plaintiff's behalf with the Michigan Employment Relations Commission ("MERC"). The Union had intended to file the charge with the National Labor Relations Board ("NLRB") based on an allegation that the Hospital was refusing to arbitrate because of plaintiff's status as a union steward. On September 23, 1991, the MERC dismissed the Union's charge, holding that it lacked jurisdiction because of preemption by federal labor laws. The Union discovered its mistake in sending the charge to the MERC instead of the NLRB on the same day.

Plaintiff then filed a charge against the Union with the NLRB on September 25, 1991. The charge alleged that the Union breached its duty of fair representation in the handling of the termination grievance and the MERC filing.

After a full investigation of plaintiff's claim against the Union, the NLRB dismissed her charge on October 25, 1991. The NLRB concluded the following:

there is insufficient evidence available at this time to show that the Union has violated its duty of fair representation under the Act. In this regard, it is noted that there is no evidence of any arbitrary or invidious conduct by the Union, and the Union does not appear to have processed the Charging Party's grievance in a perfunctory manner. Rather, the Union is attempting to compel the Employer to arbitrate the grievance.

Although plaintiff initially filed an appeal of the NLRB's decision, she later decided not to pursue her appeal any further.

The Union, through its legal counsel, then entered into negotiations with the Hospital in an attempt to put plaintiff's grievance before

an arbitrator. On November 14, 1991, the Union and the Hospital agreed to a bifurcated arbitration hearing. First, the arbitrator would decide the issue of whether the Union's notification of the arbitrator was timely. Depending on the arbitrator's decision on this issue, the merits of plaintiff's grievance would then be examined.

On March 16, 1992, the arbitrator held a hearing where representatives of the Union and the Hospital were present, along with the plaintiff. After reviewing post-hearing briefs presented by both sides, the arbitrator determined that plaintiff's grievance was not arbitrable. The April 18, 1992 decision of the arbitrator concluded that the Hospital's interpretation of the CBA was correct and that the Union should have notified the arbitrator at the time that it demanded arbitration. Two other arbitrators have also been called upon to interpret the same provision of the CBA dealing with notification. In one case, the arbitrator upheld the Union's position, and in the second case, the Hospital's interpretation was supported.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th

**220**

Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### III. Analysis

■ In order for plaintiff to prevail in a "hybrid" claim under section 301 of the Labor Management Relations Act, 29 U.S.C. section 185(a), she must make two showings. First, she must prove that her Union breached its duty of fair representation. Secondly, she must prove that the Hospital breached the underlying collective bargaining agreement. *White v. Anchor Motor Freight, Inc.,* 899 F.2d 555, 559 (6th Cir.1990); *Bagsby v. Lewis Bros., Inc.,* 820 F.2d 799, 801 (6th Cir.1987). If plaintiff is unable to make either showing, then this court must grant summary judgment to defendants. Because the court finds that plaintiff is unable to show that her union breached its duty of fair representation, the court will not address the issue of whether the Hospital breached the collective bargaining agreement. Furthermore, the court also declines to address the statute of limitations issue because the court will decide the issue on the basis of the sufficiency of plaintiff's claim against the Union.

Since there are no genuine issues of material fact, the court can decide this case merely upon an examination of the applicable law. Based on this examination, the court finds that defendants deserve summary judgment for two reasons. First, plaintiff is barred from claiming that the Union breached its duty to fairly represent her because the NLRB found that her claim had no merit. Furthermore, even if plaintiff is not barred by res judicata, plaintiff cannot show that her union breached its duty of fair representation under the standards established by the Supreme Court.

### A. Res Judicata

■ Defendants argue that plaintiff's claim is barred by the NLRB's determination of the issue of whether the Union breached its duty of fair representation. The NLRB ruled that "there is insufficient evidence available at this time to show that the Union has violated its duty" and that "there is no evidence of any arbitrary or invidious con-duct by the Union." The NLRB directly addressed the Union's mistaken filing with the MERC and the Union's decision to follow its own interpretation of the grievance procedure. After her charge was denied, plaintiff appealed the decision, but then failed to pursue her appeal any further.

■ Res judicata bars relitigation of a claim that a party raised in a prior adjudication. *Martin v. Garman Constr. Co.,* 945 F.2d 1000, 1003 (6th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1244, 117 L.Ed.2d 476 (1992). The Supreme Court has determined that agency proceedings can be res judicata in later judicial proceedings. *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). The issue is whether the parties had a full and fair opportunity to litigate the issue before the agency. *Kremer v. Chemical Constr. Co.,* 456 U.S. 461, 480–81, 102 S.Ct. 1883, 1896–97, 72 L.Ed.2d 262 (1982).

Plaintiff made the decision to put her case before the NLRB. Unless she is bound by its decision, the investigation and determination made by the NLRB would be a nullity. If she had a legitimate claim, plaintiff should have pressed forward with her appeal and tried to convince the NLRB through additional evidence that its earlier decision was mistaken. Instead, plaintiff abandoned the process and decided to take her chances with the arbitration hearing that the Union had finally convinced the Hospital to hold. In order to avoid making action before the NLRB a nullity, this court will give its decision preclusive effect against plaintiff.

### B. Duty of Fair Representation

■ Even if plaintiff is not barred by the decision of the NLRB, the facts of the case, viewed in the light most favorable to plaintiff, do not establish that the Union breached its duty of fair representation.

■ In order to prove that a union breached its duty of fair representation, a member of the union must show that the union's conduct was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). A union's actions "are arbitrary only

if ... the union's behavior is so far outside a 'wide range of reasonableness'" as to be "wholly 'irrational.'" *Airline Pilots Ass'n v. O'Neill,* 499 U.S. 65, 67, 79, 111 S.Ct. 1127, 1130, 1136, 113 L.Ed.2d 51, 58, 65 (1991) (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953)). Furthermore, "mere negligence" by a union will not state a claim for violation of the duty of fair representation. *United Steelworkers v. Rawson,* 495 U.S. 362, 376, 110 S.Ct. 1904, 1913, 109 L.Ed.2d 362 (1990). Thus, the Supreme Court has erected a high and difficult standard for claimed breaches of the duty of fair representation.

Plaintiff claims that the Union acted arbitrarily when it failed to follow the Hospital's interpretation of the arbitration notification requirements. She alleges that the Union's failure to notify the arbitrator was irrational and "extremely risky." Plaintiff makes no claim, however, that the Union's conduct was discriminatory or in bad faith. The fact that the Union mistakenly made a MERC charge instead of an NLRB charge is not even claimed as a breach of the duty of fair representation. Both parties agree that mere negligence is not enough. *Rawson,* 495 U.S. at 376, 110 S.Ct. at 1913. Plaintiff relies entirely on the Union's decision to follow its internal policy of not notifying the arbitrator at the same time that it demanded arbitration from the Hospital. Plaintiff calls this action arbitrary and wholly irrational.

As a matter of law, however, the Union's conduct was anything but irrational. The Union's conduct was well within the wide range of reasonableness allowed by the Supreme Court. Although plaintiff calls the Union's conduct "extremely risky," two weeks before plaintiff's grievance was decided, a different arbitrator decided in favor of the Union's interpretation. After examining the relevant provision of the CBA, the court is unable to declare that either interpretation of the grievance procedure is so clearly correct that an opposite contention would be irrational. A reasonable jury could not find in favor of the plaintiff on this issue.

Furthermore, rather than constituting arbitrary conduct, the Union's adherence to its position was longstanding and consistent. The Union followed its interpretation of the CBA for over four years. Plaintiff's claims that the Union's position was incorrect, risky, and mistaken are not supported by the law. The "relevant issue in assessing a union's judgment is not whether it acted incorrectly, but whether it acted in bad faith." *Anderson v. Ideal Basic Indus.,* 804 F.2d 950, 953 (6th Cir.1986); *see Walk v. PIE Nationwide, Inc.,* 958 F.2d 1323, 1326 (6th Cir.1992) ("Mere errors in judgment will not suffice" to prove a breach of a union's duty of fair representation.). In *Poole v. Budd Co.,* 706 F.2d 181 (6th Cir.1983), the Sixth Circuit upheld an award of summary judgment against a plaintiff claiming that his union breached its duty of fair representation when it mistakenly decided not to pursue his grievance to arbitration. The court reiterated that "mistaken judgment is insufficient." *Id.* at 183. The court also recognized that the "grievance process is not expected to be error free and the courts should hesitate to interfere with legitimate internal union decisions." *Id.* at 184. In this case, the Union made a legitimate choice in its interpretation of the CBA. This court will not disturb the Union's reasonable, internal decision.

Beyond mere mistaken judgment, the facts show that the Union acted quickly and effectively on plaintiff's behalf. The Union filed a grievance immediately after plaintiff was fired. The Union demanded arbitration within the time required. An arbitrator was notified within two months. Plaintiff presents no evidence that the Union was dragging its heels or delaying the resolution of her grievance. On the contrary, the Union seemingly pushed hard for the plaintiff, a union steward, in an effort to reach arbitration with the Hospital. Even though the Hospital flatly refused to go to arbitration, the Union was able to press plaintiff's case such that the Hospital finally relented and agreed to the bifurcated process. The mere fact that plaintiff's arbitrator decided against her on the timeliness issue, unlike the other arbitrator's opposite decision of the same month, does not come close to showing wholly irrational or arbitrary conduct by the Union. Thus, plaintiff has failed to meet her

222

burden of presenting sufficient facts to show that the Union breached its duty of fair representation so as to make out a section 301 claim.

## IV. Conclusion

Plaintiff's section 301 claim is barred by the decision of the NLRB. Furthermore, plaintiff has failed to show arbitrary conduct by the Union. Because the court has decided this case on these two issues, it declines to reach the statute of limitations and breach of collective bargaining agreement issues.

### ORDER

Therefore, it is hereby **ORDERED** that defendants' motion for summary judgment is **GRANTED**.

**SO ORDERED.**

### JUDGMENT

This action came before the Court, Honorable Paul V. Gadola, District Judge, presiding, and the issues having been duly considered and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED that the plaintiff take nothing and that the action be dismissed on the merits.