Carmela F. DURKO, Plaintiff,

v.

OI–NEG TV PRODUCTS,
et al., Defendants.

Civ. A. No. 4:CV–93–1284.

United States District Court,
M.D. Pennsylvania.

Sept. 15, 1994.

David P. Tomaszewski, Kimberly D. Borland, Wilkes Barre, PA, for plaintiff.

Arthur L. Piccone, Wilkes Barre, PA, for defendants.

## MEMORANDUM

VANASKIE, District Judge.

This is an employment discrimination case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.,* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. §§ 951, *et seq.* Plaintiff, Carmela F. Durko ("Durko"), has named as defendants her employer, OI–NEG TV Products, Inc. (hereinafter referred to as the "Employer"), and her collective bargaining representative, Glass, Molders, Pottery, Plastics & Allied Workers International Union AFL–CIO, CLC No. 243 (hereinafter referred to as the "Union").

The Employer has moved for summary judgment on the ground that *res judicata* effect should be given to the determinations of the Regional Director of the National Labor Relations Board ("NLRB") that matters of which plaintiff complains in this action did not warrant the filing of a complaint by the NLRB. Because it is evident that the decisions of a Regional Director of the NLRB to refuse to issue complaints are not entitled to preclusive effect, the Employer's summary judgment motion will be denied.

The Employer has alternatively moved for partial summary judgment, asserting that plaintiff may not seek to recover damages for emotional distress or punitive damages. Because the 1991 Amendments to Title VII authorize an award of damages for emotional distress and punitive damages, 42 U.S.C. § 1981a, and inasmuch as Durko has presented sufficient evidence to support such claims, partial summary judgment will also be denied.

## BACKGROUND

The Employer hired Durko in March of 1986. At all times relevant to this action, Durko was a member of the Union. The collective bargaining agreement between the Employer and the Union governs matters such as seniority and rights of "recall," *i.e.,* the right to return to an employment position that an employee previously held without requiring posting of the position and bidding for the position on the basis of seniority.

In May of 1991, the Employer posted notice of an opening on the "D Shift" for the position of Assistant Furnace Operator. Durko successfully bid this position and began training for it in June of 1991.

Shortly after Durko began training as an Assistant Furnace Operator, the Union filed a grievance with the Employer, contending that the position should not have been posted because Walter Snopeck was entitled to recall rights for that position. As explained to the Court during a pretrial conference, the Employer is expected to afford employees with recall rights the opportunity to fill a vacancy before posting it for bidding on the basis of seniority. Only if there are no recall rights exercised for a position should the vacancy be posted and awarded generally on the basis of seniority.[1]

By letter dated June 9, 1992, Durko was informed that in light of the favorable resolution of the grievance pursued on behalf of Snopeck, Durko would be removed from her position as an Assistant Furnace Operator.[2] On July 20, 1992, Durko filed with the NLRB charges against her Employer and Union. Durko's charges, *inter alia*, asserted:

> [T]he Employer has refused to honor Ms. Durko's rights under the Collective Bargaining Agreement ... despite clear contractual provisions which would allow her to remain as Assistant Furnace Operator on D Shift and which would have prevented her being bumped from D Shift by Mr. Snopeck. The Employer's actions were done with an intent to discriminate against Ms. Durko based on her gender, with such discrimination further having the effect of discouraging membership in Ms. Durko's union.... [Exhibit "A" to the Employer's Summary Judgment Motion (Dkt.Entry #18).]

By letter dated September 14, 1992, the Director of Region 4 of the NLRB informed Durko that following an investigation he had concluded that her "charges lack merit." (Exhibit "B" to the Employer's Summary Judgment Motion (Dkt.Entry #18).) The Regional Director further wrote that "[w]ith respect to the charge against the Employer, there was no evidence that the Employer discriminated against you because of any Union or other protected concerted activity in which you may have engaged." (*Id.*) The Regional Director refused to issue a complaint, and Durko did not seek further administrative agency review of the matter.

On February 24, 1993, Durko again filed charges against her Employer and Union with the NLRB. (Exhibit "C" to the Employer's Summary Judgment Motion (Dkt.Entry #18).) The basis for these charges was the failure of the employer to recognize her right of recall to the position of Assistant Furnace Operator, for which a vacancy had been posted on January 13, 1993. In this second NLRB charge, Durko once again asserted that the Employer's "actions were done with an intent to discriminate against [her] based on her gender, with such discrimination further having the .effect of discouraging membership in [her] Union...." (*Id.*)

By letter dated April 12, 1993, the NLRB Regional Director once again concluded that, based upon an investigation, Durko's charges "lack merit." The Regional Director also wrote that "there was no evidence that the Employer discriminated against you because of any Union or other protected concerted activity in which you may have engaged." (Exhibit "D" to the Employer's Summary Judgment Motion (Dkt.Entry #18).) Durko did not appeal the Regional Director's decision to refuse to issue a complaint with respect to the Employer's refusal to recognize purported recall rights.

---

**1.** It should be noted that Mr. Snopeck did not bid for the position of Assistant Furnace Operator on the "D Shift" when it was posted. It is undisputed that had he bid for the position he would have prevailed over Durko on the basis of his greater seniority.

**2.** It appears that Durko learned in December of 1991 that the Union and Employer had reached a resolution of the Snopeck grievance that would result in the removal of Durko from her position as an Assistant Furnace Operator. When officials of the local Union subsequently refused to process a grievance on her behalf, Durko filed a complaint with the International Union. The letter of June 9, 1992 to which reference is made in the text was signed by a Vice President of the International Union.

On August 4, 1992, while her first charge with the NLRB was pending, Durko filed a complaint against the Union and her Employer with the Pennsylvania Human Relations Commission ("PHRC"). Her Complaint alleged, *inter alia*, that the Employer had discriminated against her on the basis of her gender. This complaint was referred to the Equal Employment Opportunity Commission ("EEOC") for the purpose of dual filing. On February 13, 1993, Durko filed an amended complaint with the PHRC, which was referred to the EEOC for the purpose of dual filing. On May 21, 1993, Durko received, pursuant to her request, a notice of right to sue from the EEOC. This action was commenced on August 17, 1993.

The Employer's summary judgment motion was filed on May 16, 1994. Briefing was completed on July 5, 1994, and this matter is now ripe for disposition.

## DISCUSSION

### A. *Res Judicata*

■ The Employer contends that Durko, having failed to appeal the NLRB Regional Director's refusals to issue complaints on her charges, is now foreclosed from pursuing employment discrimination claims under Title VII and the PHRA.[3] In short, the Employer contends that *res judicata* effect must be given to determinations of Regional Directors of the NLRB refusing to issue complaints on employee charges of alleged unfair labor practices involving gender discrimination.

■2, 3] The Supreme Court's often-cited case acknowledging the application of res judicata to administrative determinations, *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), taught "that giving preclusive effect to administrative [decisions] encompasses both the parties' interest in avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources." *University of Tennessee v. Elliott*, 478 U.S. 788, 798, 106 S.Ct. 3220,

3226, 92 L.Ed.2d 635 (1986). The district court's functional application of *res judicata* can be described as follows:

> Administrative proceedings may have preclusive effect on subsequent litigation when the agency "is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate...." *Pygatt v. Painters' Local No. 277*, 763 F.Supp. 1301, 1307 (D.N.J.1991) (citations omitted).

*Res judicata* thus applies only when the administrative agency acts in a judicial capacity to resolve disputed issues of fact *and* the parties had an adequate opportunity to litigate. An agency is said to act "in a judicial capacity when it provides the following safeguards: (1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examination and cross-examination at the hearing, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law." *Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1300 (7th Cir.1992).

As noted above, defendants rely upon determinations of a Regional Director of the NLRB concerning charges filed by Durko. Justice Douglas, dissenting in *Motor Coach Employees v. Lockridge*, described the procedures which are pursued after the filing of a charge with the NLRB as follows:

> When the charge is received, it is filed, docketed ... and assigned to a member of the field staff for investigation.... Following the investigation, the Regional Director makes his decision. "If investigation reveals that there has been no violation of the National Labor Relations Act or the evidence is insufficient to substantiate the charge, the regional director recommends withdrawal of the charge by the person who filed." If the complaining party does not withdraw the charge, the Regional Director dismisses it. 403 U.S. 274,

---

3. The Union separately moved for summary judgment on July 12, 1994. The Union, however, did not assert a *res judicata* defense. The

Union's motion will be disposed of by separate Memorandum and Order.

303 [91 S.Ct. 1909, 1926, 29 L.Ed.2d 473] (1971).[4]

The rules and regulations of the NLRB explain that after "a charge has been filed, if it appears to the Regional Director that formal proceedings in respect thereto should be instituted, he shall issue ... a formal complaint." 29 CFR § 102.15. The NLRB's statement of procedures indicate that the Regional Director institutes a complaint if "the charge appears to have merit." 29 CFR § 101.8. The regulations provide no process or standard by which the Regional Director shall formulate or base a determination as to whether to issue a formal complaint. The regulations, however, do provide that if the Regional Director declines to issue a complaint, an appeal may be filed with the NLRB general counsel. 29 CFR § 102.19(a).

In *Sanchez v. Puerto Rico Marine Management, Inc.*, 593 F.Supp. 787, 792 (D.P.R. 1984), the court rejected the argument that "a decision of a regional director of the National Labor Relations Board ... rendered by letter [and] refusing to issue a complaint constitutes *res judicata*." The court explained:

> [A] conclusion of a regional director of the [NLRB] that an unfair labor practice complaint should not issue is not an adjudication which would give rise to collateral estoppel. The legal rights and liabilities at issue [in the suit before the court] are distinct from those involved in proceedings before the [NLRB]. Each represents a different cause of action, and a decision in one type of suit cannot constitute *res judicata* as to [sic] other. Therefore, the determination of the [NLRB] does not preclude plaintiffs from asserting their claim in this case. *Id.* at 793 (citation omitted).

In Durko's case, the Regional Director's letters indicate that he based his findings on the results of "investigations." The Regional Director's letter also indicated that Durko's charges were "carefully investigated and considered." As noted above, the Regional Director was obligated to issue a complaint only "if it appears to [him] that formal proceedings in respect thereto should be instituted." 29 CFR § 102.15. The Regional Director did not conduct a hearing at which the parties were presented with the opportunity to examine and cross-examine witnesses or to object to evidence. *See Reed*, 971 F.2d at 1300. Nor were the parties afforded the opportunity to conduct any discovery. *See id.* Therefore, it cannot be said that the NLRB acted in a judicial capacity in deciding not to issue complaints on Durko's charges. Consequently, *res judicata* does not apply.[5]

The case upon which the Employer primarily relies in arguing that the Regional Director's action should carry preclusive effect is *Baker v. Detroit Riverview Hospital*, 834 F.Supp. 216 (E.D.Mich.1993). In *Baker*, the court addressed a terminated employee's claim that her union breached its duty of fair representation by failing to properly file an unfair labor practice charge with the NLRB. 834 F.Supp. at 220. *See Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967) (A union's "exclusive ... authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any...."). The terminated employee had filed a charge against the union with the NLRB, but "the NLRB concluded [that] 'there is insufficient evidence available at this time to show that the Union has violated its duty of fair representation under the Act.'" *Baker*, 834 F.Supp. at 218.[6] The court asserted two reasons to support its determination that the employee's duty of fair representation claim failed, with

---

**4.** At a pretrial conference, counsel for the parties acknowledged that this is essentially the procedure followed in connection with Durko's charges. They also acknowledged that the Regional director did not conduct an evidentiary hearing before deciding to refuse to issue complaints against the Employer.

**5.** It also should be observed that in *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Supreme Court held

that unreviewed state administrative proceedings do not have a preclusive effect on Title VII claims.

**6.** The opinion in *Baker* is unclear whether the NLRB's decision concerning the sufficiency of evidence was made by a Regional Director, as in Durko's case, or by the General Counsel upon appeal from the decision of a Regional Director.

one reason being the application of *res judicata* to the NLRB determination. *Id.* at 220. Although the court properly observed that, as a general rule in considering the application of *res judicata*, the "issue is whether the parties had a full and fair opportunity to litigate before the agency," the court did not apply *res judicata* based on a finding that the parties actually enjoyed a "full and fair opportunity to litigate" before the NLRB. *Id.* Rather, the court gave preclusive effect to the NLRB's prior determination in "order to avoid making [the] action before the NLRB a nullity." *Id.*

*Baker* appears to depart from well-settled precedent limiting the preclusive effect of agency determinations to instances when the agency acts in a judicial capacity. Accordingly, this Court will not adopt the reasoning in *Baker*.

■ Even if it could be said that the Regional Director was acting in a "judicial capacity," *res judicata* would be inapplicable because it cannot be said that Durko presented the same claims at issue in this litigation to the Regional Director. The Court agrees with Durko's characterization of her NLRB charges as being limited to gender discrimination that had the effect of discouraging membership in her Union "as well as interfering with, restraining, and coercing employees in violation of the rights guaranteed by the [National Labor Relations Act]." (Durko's Brief in opposition to the Employer's Summary Judgment Motion (Dkt. Entry # 20) at 6.) The Employer contends that the conclusory statement of the Regional Director that Durko's "charges lack merit" establishes that the Regional Director concluded that there was no gender discrimination in Durko's situation. In view of the nature of the charges presented to the NLRB, the Court cannot agree with the Employer's conclusion. In this regard, there does not appear to have been asserted before the NLRB claims concerning a hostile work environment that are present in this case.

■ Another case upon which the Employer relies is *Rudolph v. Wagner Electric Corporation*, 68 Lab.Cas. 12,798, 1972 WL 808 (E.D.Mo.1972). The *Rudolph* court addressed a plaintiff's claim of discrimination

by her employer and her claim that her union breached its duty of fair representation. The plaintiff had filed a charge with the NLRB, and the NLRB Regional Director "determined after an investigation that there was no evidence on which to proceed and refused to issue a complaint." The *Rudolph* court dismissed the plaintiff's suit based upon, *inter alia*, language from the dissents of Justice White and Justice Douglas in *Motor Coach Employees*, 403 U.S. at 303, 91 S.Ct. at 1926, of which Justice Douglas is quoted above, in support of the proposition "'that if the General Counsel refuses to act, no one may act and the employee is barred from relief in either state or federal court.'" 68 Lab.Cas. 12,798.

■ Such a proposition appears to be established law. *See N.L.R.B. v. United Food and Commercial Workers Union*, 484 U.S. 112, 108 S.Ct. 413, 98 L.Ed.2d 429 (1987) (holding that a federal court has no authority to review a decision of the NLRB's General Counsel dismissing an unfair labor practice complaint pursuant to an informal settlement in which the charging party refused to join); *Barnes v. Small*, 840 F.2d 972, 980–81 (D.C.Cir.1988); *Turgeon v. Federal Labor Relations Authority*, 677 F.2d 937, 940 (D.C.Cir.1982) (a "decision of the NLRB's General Counsel declining to issue an unfair labor practice complaint is not a 'final order of the Board.'"). Consequently, even disguised attempts to invoke the district court's jurisdiction in order to review the NLRB's determinations to not issue a complaint cannot be entertained. *See Becker v. N.L.R.B.*, 678 F.Supp. 406, 408 (E.D.N.Y.1987) (dismissing suit with prejudice after construing complaint as "seeking review of the General Counsel's refusal to issue a complaint....") Nevertheless, an action that presents an independent basis for relief, separate from that asserted in the charge filed with the NLRB, should not be lightly dismissed as a mere attempt to review the NLRB's determinations. *See Barnes v. Small*, 840 F.2d 972, 980–81 (D.C.Cir.1988) (where the court entertained a portion of a discharged employee's suit filed pursuant to Title VII, but also recognized that the decision by the General Counsel of the Federal Labor Relations Au-

thority not to issue an unfair labor practice complaint was not reviewable). Accordingly, the Employer's motion for summary judgment based upon the doctrine of *res judicata* will be denied.

## B. Emotional Distress And Punitive Damage Claims

■■ The Employer, treating Durko's request for damages for emotional distress as a claim premised upon the independent tort of intentional infliction of emotional distress, contends that such a claim is precluded by the Pennsylvania Workers' Compensation Act, 77 P.S. §§ 1, *et seq.* Durko's complaint, however, does not present a separate claim against the employer for the tort of intentional infliction of emotional distress. The complaint contains only two counts against the Employer, the first being premised on Title VII and the second being premised on the PHRA. The 1991 Amendments to Title VII specifically provide for the recovery of compensatory damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses" resulting from intentional discrimination. 42 U.S.C. § 1981a(b)(3). Damages for emotional distress are available to compensate victims of violations of the PHRA. *See Gallo v. John Powell Chevrolet, Inc.,* 779 F.Supp. 804, 815–16 (M.D.Pa.1991).

None of the cases cited by the Employer hold that recovery of damages for emotional distress under Title VII or the PHRA is precluded by the exclusivity provisions of the Pennsylvania Workers' Compensation Act. Accordingly, the Employer's argument premised upon the Workers Compensation Act is without merit.

■ Although the Employer argues with great persuasiveness that Durko has not presented facts sufficient to warrant submission of a claim for intentional infliction of emotional distress to a jury, such a claim has not been presented in this case.[7] As noted above, recovery of damages for mental anguish and emotional distress is authorized when caused by violations of the employment discrimination laws. Recovery of damages for such items thus depends upon a determination by the trier of fact that Durko has been the victim of intentional discrimination and that the violation of applicable legislation has caused her to suffer emotional distress. *See, e.g., Gallo, supra,* 779 F.Supp. at 815–16.

■ Finally, the Employer contends that Durko has not proffered sufficient evidence to warrant submission of a claim for punitive damages to a jury. Durko's proffer on this issue is indeed meager, but the Court is reluctant to remove punitive damages from a case such as this based upon a sterile paper record. The Employer, of course, will have the opportunity to seek judgment as a matter of law on the punitive damage issue following presentation of evidence at trial.

## CONCLUSION

For the foregoing reasons, the Employer's motion for summary judgment on the basis of the doctrine of *res judicata* or, in the alternative, for partial summary judgment on claims for emotional distress and punitive damages, will be denied. An appropriate Order is attached.

---

7. Conduct in the employment context will rarely provide the basis for recovery for intentional infliction of emotional distress. *See Andrews v. City of Philadelphia,* 895 F.2d 1469, 1487 (3rd Cir.1990). The Court of Appeals for the Third Circuit has observed that " 'the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee.' " *Id.* Although Durko contends that the conduct at issue here qualifies for recognition as intentional infliction of emotional distress, she has not asserted such a claim in her complaint and there is thus no need to address the sufficiency of the evidence in the context of that tort.