Paul G. HERBST, Plaintiff,

v.

George V. VOINOVICH, in his official capacity as the Governor of the State of Ohio, et al., Defendants.

No. 1:96–CV–1002.

United States District Court,
N.D. Ohio,
Eastern Division.

June 22, 1998.

---

Timothy J. Kucharski, Law Offices Of Brent L. English, Cleveland, OH, Mark Gardner, Office Of The Public Defender Lake County, Painesville, OH, for Plaintiff.

Chester T. Lyman, Jr., Office Of The Attorney General, Elizabeth A. Scott, Office Of The Attorney General, Chief Counsel's Staff, Columbus, OH, for George V. Voinovich, Ohio State.

Chester T. Lyman, Jr., Christopher S. Cook, Office Of The Attorney General, for Franklin R. Caltrider, Ohio Bureau of Motor Vehicles, Legal Dept.

## MEMORANDUM OPINION

GWIN, District Judge.

On March 16, 1998, the parties filed cross-motions for summary judgment in this constitutional challenge to Ohio's system of monetary charges for reinstating the driver's licenses of those convicted of drunk driving [Docs. 27, 28]. In ruling on these cross-motions for summary judgment, the Court examines whether the Eleventh Amendment to the United States Constitution stops Plaintiff Paul G. Herbst's claims for damages or for injunctive relief. Then the Court decides whether it should abstain on prudential grounds from deciding Plaintiff Herbst's claims. Then the Court decides if the Dou-

ble Jeopardy Clause prevents Ohio's driver's license reinstatement fee after conviction for drunk driving. In deciding whether the Double Jeopardy Clause stops the reinstatement fee, the Court considers whether the fee is a civil remedy or criminal punishment. Finally, the Court looks to whether plaintiff should receive injunctive relief.

## I

The State of Ohio convicted Plaintiff Paul G. Herbst of drunk driving in Ohio. After convicting Herbst of drunk driving, Ohio required Herbst to pay $500 to reinstate his driving license privileges. After paying these fees, Herbst now says Ohio violates the Double Jeopardy Clause of the United States Constitution.[1]

Defendant, Franklin R. Caltrider, the current registrar of the Ohio Bureau of Motor Vehicles, requests dismissal based on the Eleventh Amendment. In the alternative, Defendant Caltrider asks this Court to abstain from deciding Plaintiff Herbst's claims in favor of a pending state court proceeding. To effectuate this abstention, Defendant Caltrider asks this Court to reimpose a stay the Court earlier imposed.

For the reasons that follow, the Court dismisses Plaintiff Herbst's claims for damages. While dismissing Herbst's claims for damages, the Court finds jurisdiction to review Herbst's claim for injunctive relief. After finding that the Court has jurisdiction over Plaintiff Herbst's claims for injunctive relief, the Court finds that Defendant is entitled to judgment on plaintiff's claim for injunctive relief on double jeopardy claims as a matter of law. In deciding against plaintiff on these double jeopardy claims, the Court finds Ohio's statutes to be civil remedies, not

criminal penalties. Having found that defendant is entitled to judgment as a matter of law, the Court denies Plaintiff Herbst's request for injunctive relief.

## II

On December 15, 1995, a deputy of the Lake County Sheriff's department arrested the plaintiff for drunken driving in violation of Ohio Revised Code § 4511.19(A)(1), (3).[2] After arresting Herbst, the deputy requested Herbst submit to an alcohol breath test. In response to the request, plaintiff complied and tested at 0.191 body alcohol content ("BAC"), which is over the legal limit of 0.100 BAC.

After finding that Herbst had a blood alcohol content over the legal limit, the deputy placed Herbst's driver's license under an administrative license suspension pursuant to Ohio Rev.Code § 4511.191.

Later that day, Herbst appeared, without counsel, before a judge of the Painesville Municipal Court and entered a plea of no contest to having violated § 4511.191(A)(3). After receiving the plea of no contest and finding Herbst guilty, that court sentenced Herbst under Ohio Rev.Code §§ 4511.99 and 4507.16.[3]

After being sentenced, Plaintiff Herbst served three days in a state-sanctioned driver intervention program, paid the $300 fine plus costs, and completed six months of probationary supervision.

As earlier indicated, Ohio administratively suspended Herbst's driving privileges at the time of his arrest. After receiving his criminal sentence, Herbst was under two separate driver's license suspensions: (1) the administrative license suspension and (2) the trial

---

1. After originally filing claims under the Due Process and Takings Clauses, state constitutional claims and claims for a class action, Herbst dropped these requests.

2. Section (A)(1) makes it a criminal offense to operate a motor vehicle while "under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse." Section (A)(3) makes it a criminal offense to operate a vehicle with "a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of breath." A person may be charged with a viola-

tion of more than one section of § 4511.19(A) (i.e., (A)(1), (A)(2)–blood, (A)(3)–breath, or (A)(4)–urine), but may be convicted (found guilty and sentenced) of only one section.

3. The Municipal Court sentenced Herbst to: (1) 53 days in jail, with 50 days suspended, three days to be served in the county jail or in a driver's intervention program; (2) six months of probation; (3) a six month driver's license suspension; (4) the completion of a chemical abuse assessment and program, if needed; and (5) a $ 300 fine plus court costs.

court's judicially-imposed suspension for the drunken driving conviction.[4]

Herbst satisfied the judicial sentence. Then, the Bureau of Motor Vehicles required Herbst to pay two driver's license reinstatement fees, each in the amount of $250 as a consequence of his drunk driving arrest and conviction.[5] Unless Herbst paid this $500 fee, the Bureau of Motor Vehicles would not reinstate his license at the end of the six-month court suspension. Unless Herbst paid this $500 fee, the Bureau of Motor Vehicles would continue his license suspension indefinitely.

In imposing these "reinstatement fees," the Bureau of Motor Vehicles acted pursuant to Ohio Rev.Code § 4511.191(L). That law aims exclusively against those individuals who are arrested and/or convicted of drunken driving.

### III

Herbst filed this suit[6] seeking declaratory, injunctive and monetary relief. In his suit, Herbst claims the driver's license reinstatement fees the Bureau of Motor Vehicles demanded is a second form of punishment imposed for the identical conduct underlying his drunk driving arrest and conviction. He argues that imposition of the driver's license reinstatement fee violates his rights under the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution.

After filing the complaint, this Court dismissed certain defendants. The Court dismissed the state of Ohio, Governor George Voinovich, and the Bureau of Motor Vehicles's legal department. After these dismissals, the case proceeds against Defendant Registrar Caltrider.

### IV

■ Defendant suggests that this court should abstain from the exercise of jurisdiction over this case. The abstention doctrine

was described in *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Abstention from the exercise of federal jurisdiction is the exception not the rule. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Under the abstention doctrine, where a state law is being challenged in federal court as contrary to the federal Constitution and there are questions of state law which may be dispositive of the case, a federal court should abstain from deciding the case and allow the state courts to decide the state issues. Such abstention is appropriate in a case where the challenged state statute is susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching the federal constitutional question. *Martin–Marietta Corp. v. Bendix Corp.,* 690 F.2d 558, 563 (6th Cir.1982).

Pending in state court is *Judy v. State of Ohio, Bureau of Motor Vehicles,* Case No. CI95–0332 (Lucas Co. Ct. C.P.). In *Judy,* the plaintiffs brought a class action Equal Protection challenge to Ohio's reinstatement scheme. In *Judy,* the Lucas County Court of Common Pleas gave partial summary judgment on state law construction grounds. The *Judy* Court did not reach federal or state Equal Protection claims and instead construed state law to require only one license reinstatement fee for those convicted in situations similar to Plaintiff Herbst. *Id.* (Lucas Co. Ct. C.P. Feb. 20, 1998) (opinion and judgment).

■ The Court declines to abstain from a determination of Herbst's claims. In deciding not to abstain, the Court exercises its discretion. *See Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir.1996) (appropriate to reach merits though courts "do not ordinarily decide constitutional issues if a case can be resolved on non-constitutional grounds"), *cert. denied,* —— U.S. ——, 117

---

**4.** § 4507.16(B)(1).

**5.** The Bureau of Motor Vehicles required payment of $250 for the administrative license suspension and $250 for the judicial suspension for a total of $500.

**6.** Plaintiff Herbst filed this action as a class action but plaintiff has never filed a motion to certify a class pursuant to Fed.R.Civ.P. 23. In Plaintiff's Response To Defendant's Motion For Summary Judgment, he waived the class issue [Doc. 31].

S.Ct. 2409, 138 L.Ed.2d 175 (1997); *U.S. v. Confederate Acres Sanitary Sewage & Drainage System,* 935 F.2d 796, 800 (6th Cir.1991).

In the state action, statutory construction avoided reaching the constitutional claims presented there. In this very different case, the Court believes it would be a waste of judicial time and resources to avoid deciding the sole remaining issue in the litigation. *Id.* This is especially true as the parties have briefed the constitutional issue, and this claim played no part in the state decision. Therefore, the Court sees no reason to abstain under the *Pullman* abstention doctrine.

## V

The State of Ohio challenges this Court's jurisdiction under the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Eleventh Amendment "enacts a sovereign immunity from suit, rather than a non-waivable limit on the federal judiciary's subject-matter jurisdiction." *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, ——, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438 (1997) (opinion for the court). Although the Eleventh Amendment does not expressly provide as such, the Supreme Court has held the amendment extends state immunity to those suits a citizen brings against his or her own state. *Id.; Florida Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 684, 102 S.Ct. 3304, 3314, 73 L.Ed.2d 1057 (1982); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

■ The amendment stops a suit by a private party that seeks to impose a liability payable from the state treasury when the state does not consent to the litigation.

*Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974).

■ The Eleventh Amendment stops suits against individuals where recovery will be obtained from the state. Even where the state is not named as a defendant, "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350–51, 89 L.Ed. 389 (1945); *see also Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974).[7]

■ While Herbst sues Registrar Caltrider, his action is really against the state of Ohio. In deciding that Herbst's suit is against Ohio, the Court finds the action is one for the recovery of money from the state. The state is the real, substantial party in interest.

■ Ohio has not waived its immunity to suit in federal courts. *State of Ohio v. Madeline Marie Nursing Homes,* 694 F.2d 449, 460 (6th Cir.1982). Absent a state waiver or congressional override, a federal court is without jurisdiction to hear a claim against a state. *Mackey v. Cleveland State University,* 837 F.Supp. 1396, 1403 (N.D.Ohio 1993) (citations omitted). *But see Seminole Tribe of Florida,* at 59 (§ 5 of the Fourteenth Amendment allows Congress to abrogate immunity from suit guaranteed by Eleventh Amendment).

■ The state of Ohio has not waived its Eleventh Amendment immunity. A waiver is only found "where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Mackey,* 837 F.Supp. at 1403; *Edelman,* 415 U.S. at 673. A state maintains Eleventh Amendment immunity from suit in federal court though it has waived its immunity from liability and consented to be sued

---

7. "Though a § 1983 action may be instituted by [plaintiffs] such as respondent, a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan,* 415 U.S. at 677 (citations omitted).

in its own courts. *Ford Motor Co.*, 323 U.S. at 465.

■ The state of Ohio has waived its immunity from suit and consented to having its liability determined by the state Court of Claims. Ohio Rev.Code § 2743.02(A)(1). However, § 2743.02(A)(1) is not a waiver of immunity from suit in federal court. *Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir.1985), *cert. denied*, 474 U.S. 824, 106 S.Ct. 79, 88 L.Ed.2d 65 (1985); *Harley v. Carman*, 585 F.Supp. 1353 (N.D.Ohio 1984).

■ Finding that the state of Ohio has not waived its immunity, the Court reviews whether Herbst's claims implicate the Eleventh Amendment. The Eleventh Amendment prohibits a monetary judgment from Defendant Caltrider as a representative of the state of Ohio. Because a monetary judgment against Caltrider would cause payment from the state treasury, the Eleventh Amendment stops this action. Because the Eleventh Amendment stops claims involving payment from state treasuries, the Court does not have jurisdiction over Herbst's claims for monetary relief.

■ While the Eleventh Amendment stops actions seeking monetary relief from state governments, the amendment does not generally prevent suit against states where the relief sought is prospective. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). This device is known as the *Young* exception.[8]

■ While the Eleventh Amendment does not generally stop suits against states or state officials seeking injunctive relief, such actions may be barred where the action implicates special sovereignty interests. Because of the uncertainty associated with judging whether special sovereignty interests are involved,[9] a state can claim sovereign immunity based on the Eleventh Amendment no matter if prospective and equitable relief are sought. *See Idaho*, 521 U.S. at ——, 117 S.Ct. at 2034 (the *Young* exception to Eleventh Amendment immunity does not allow a federal court to proceed in every case where prospective declaratory and injunctive relief is sought against a state officer named in his individual capacity); *Seminole Tribe of Florida*, 517 U.S. at 58 ("we have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment").

On the Supreme Court, two Justices[10] would hold that federal courts have jurisdiction over states in actions seeking prospective or equitable relief only where interpretation of federal law is involved and there is no state forum available to vindicate federal interests. The Supreme Court majority would find federal court jurisdiction more broadly. In finding broader jurisdiction, the Supreme Court majority would review whether the action implicates special sovereignty interests.

■ In reviewing whether this Court has jurisdiction over Herbst's constitutional challenge to Ohio's licensing requirements, this Court finds little suggesting special sovereignty concerns would be implicated. First, federal review of state action on double jeopardy grounds is longstanding. *Thompson v. State of Maine Attorney General*, 896

---

8. "... individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action." *Ex Parte Young*, 209 U.S. 123, 155–56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908).

9. Although the *Ex Parte Young* exception to Eleventh Amendment immunity generally allows a federal court to grant prospective injunctive relief, recent Supreme Court precedent holds that the *Young* exception should not be extended to all suits seeking such relief. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In these cases, the Court espoused a case-by-case analysis in ruling that suits against the state seeking prospective injunctive relief were barred by the Eleventh Amendment.

10. Chief Justice William Rehnquist, the author of the Court's opinion in *Seminole Tribe of Florida v. Florida*, and Justice William Kennedy, the author of the Court's judgment in *Idaho v. Coeur d'Alene Tribe of Idaho*.

F.Supp. 220 (D.Me.1995), *aff'd sub nom. Allen v. Attorney General of State of Maine*, 80 F.3d 569 (1st Cir.1996); *Hicks v. Duckworth*, 708 F.Supp. 214 (N.D.Ind.1989), *aff'd*, 922 F.2d 409 (7th Cir.1991). Second, the Court cannot find that state regulation of driver's licensing is somehow at the core of state sovereignty and a flashpoint of federalism.

As to Herbst's claims for injunctive and prospective relief, the Court finds that the Eleventh Amendment does not stop jurisdiction over Herbst's request for a declaratory judgment and injunctive relief. Finding jurisdiction, the Court proceeds to a determination of whether the Bureau of Motor Vehicles should be enjoined from charging double driver's license reinstatement fees.

### VI

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be rendered if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of the motion, this court shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the nonmoving party. *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252 (6th Cir. 1998). Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### VII

Having found jurisdiction to review Herbst's double jeopardy claim, the Court reviews whether Ohio's reinstatement fee implicates the Fifth Amendment. The Fifth Amendment of the United States Constitution states in part that "[n]o person ... [shall] be subject for the same offense to be twice put in jeopardy of life or limb." It applies to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794–95, 89 S.Ct. 2056, 2062–63, 23 L.Ed.2d 707 (1969).

In a recent case, the Supreme Court of the United States spoke to the reach and import of the Double Jeopardy Clause. *See Hudson v. United States*, — U.S. —, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), *abrogating United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). In *Hudson*, the Court found that the Clause "protects only against the imposition of multiple criminal punishments for the same offense." *Hudson*, — U.S. at —, 118 S.Ct. at 493 (citations omitted). Before *Hudson*, the Court said the premise of the Double Jeopardy Clause was a prohibition of a second prosecution for the same offense after an acquittal or conviction, and of multiple punishments for the same offense. *Halper*, 490 U.S. at 440.

In *Hudson*, the Court suggested that the factors considered in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), serve as "useful guideposts" in determining whether a sanction amounts to either a civil remedy or criminal penalty. *Hudson*, — U.S. at —, 118 S.Ct. at 493.[11] In using these guideposts, Courts

---

11. Those factors include: (1) "whether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purposes to which it may rationally

must look "to the statute on its face," and "only the clearest proof" will take what the legislature intended as a civil remedy and make it a criminal penalty. *Id.* (citations omitted).

Applying the *Hudson* analysis, the Court finds the reinstatement fee provision of Ohio Rev.Code § 4511.191(L) does not violate the double jeopardy clause. In finding that § 4511.191(L) does not violate the double jeopardy provision, the Court finds that the statutory scheme for reinstatement is civil, not criminal.

 In deciding that § 4511.191(L) is a civil remedy, not a criminal punishment, the Court first looks at the statute. That statute shows a legislative intent that the reinstatement fee is civil in nature and remedial in purpose. That the statute is civil in nature is shown by the distribution of the monies received. The monies collected under § 4511.191(L) are distributed to various remedial drug and alcohol treatment organizations for alcohol education and rehabilitation programs.[12]

The method of reinstatement collection supports the civil nature of the reinstatement system. The Bureau of Motor Vehicles collect the reinstatement fees and distributes the monies. "That such authority was conferred upon administrative agencies is prima facie evidence that [the legislature] intended to provide for a civil sanction." *Hudson,* — U.S. at ——, 118 S.Ct. at 495 (citation omitted).

*Hudson* also points out that neither the imposition of money penalties (such as a reinstatement fee), nor "revocation of a privilege voluntarily granted" (here, an Ohio driver's license) historically have been viewed as punishment. ("[T]he payment of fixed or variable sums of money [is a] sanction which has been recognized as enforceable by civil

proceedings since the original revenue law of 1789"). *Id.*

The reinstatement fees also do not constitute an "affirmative disability or restraint" in the double jeopardy context. *See Hudson,* — U.S. at ——, 118 S.Ct. at 496 (citation omitted). Although plaintiff would be precluded from regaining his driver's license until payment of the reinstatement fees, this does not approach the " 'infamous punishment' of imprisonment." *Id.* (quoting *Flemming v. Nestor,* 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)).

Requiring payment of the fees is also not a sanction imposed only upon a showing of scienter. Obviously, the reinstatement fee is required of any driver who has suffered an administrative license suspension, regardless of that individual's state of mind when he was arrested and charged with drunken driving. As *Hudson* points out, this fact is not dispositive because in the double jeopardy context one must examine the statute on its face to ascertain whether the sanction is criminal in nature.

Examination of the reinstatement fee provision reinforces its nonpunitive civil nature. The monies collected are used to ameliorate the problem of drunk driving. In fact, the monies go directly to programs such as the indigent driver and alcohol treatment fund and the Ohio Department of Alcohol and Drug Addiction Services, as well as the Crime Victims Reparations Fund and the DARE program.

Furthermore, although drunken driving is a criminal offense, the administrative license suspension reinstatement fee requirement is not. As the state supreme court recognized in *State v. Gustafson,* 76 Ohio St.3d 425, 668 N.E.2d 435 (1996), the administrative license suspension is "civil in nature and remedial in purpose." *Id.* at 440, 668 N.E.2d 435. The

---

be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purposes assigned." *Hudson,* — U.S. at ——, 118 S.Ct. at 493 (*citing Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963)).

12. *See* Ohio Rev.Code § 4511.191(L)(2)(a)–(e). Neither Defendant Franklin Caltrider nor the Bureau of Motor Vehicles retain any of the rein-

statement fees. The bureau acts as the conduit for the deposit of these monies into the state treasury and forwards such to statutorily named beneficiary organizations. These include the Rehabilitation Services Commission, the Department of Alcohol and Drug Addiction Services, the Crime Victims Reparations Fund, and the Drug Abuse Resistance Education (DARE) Fund.

fact that the drunken driving charge may form the basis of a criminal offense does not transform the administrative license suspension or the resulting reinstatement fee into a criminally punitive sanction.[13]

Although the reinstatement fees may serve to deter future drunk driving, this fact does not transform the statute into one of a criminal nature. Merely because the reinstatement fee may operate to deter some from driving drunk does not make the fee a criminal penalty in the double jeopardy context. ("To hold that the mere presence of a deterrent purpose renders [a sanction] 'criminal' for double jeopardy purposes would severely undermine the Government's ability to engage in effective regulation . . ."). *Hudson,* —— U.S. at ——, 118 S.Ct. at 496.

The reinstatement fee provision at issue, both facially and as applied, does not offend the Double Jeopardy Clause of the Constitution. The court finds that the license reinstatement fee is a civil sanction.

### VIII

A party requesting injunctive relief must show a substantial likelihood of success on the merits. *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.,* 119 F.3d 393, 399 (6th Cir.1997). The above discussion makes it plain that Herbst's double jeopardy challenge to the state's method and amount of charging for reinstating the driver's license of convicted drunken drivers is unlikely to succeed. The Supreme Court's *Hudson* decision called into question a line of cases on which the state supreme court relied on in its *Gustafson* opinion. In *Gustafson,* the Ohio Supreme Court found that some administrative license suspensions could cease to be remedial and take on a punitive nature.

Since Plaintiff Herbst cannot show he is entitled to judgment on his double jeopardy claim, his request for an injunction will be denied. Likewise, he is not entitled to a declaratory judgment in his favor.

### IX

The Court, therefore, grants in part the defendant's motion to dismiss the plaintiff's request for monetary relief because of sovereign immunity principles based on the Eleventh Amendment. The Court also grants in part the defendant's motion for summary judgment related to the plaintiff's request for declaratory and injunctive relief on his double jeopardy challenge to Ohio's driver's license reinstatement fees. The plaintiff's motion for summary judgment is denied.

IT IS SO ORDERED.

---

**13.** The Supreme Court of Ohio did indicate that the administrative license suspension could cease to be remedial and become punitive in nature, for double jeopardy purposes, to the extent that the administrative license suspension continues subsequent to a conviction and sentencing for a drunk driving conviction. *State v. Gustafson,* 76 Ohio St.3d 425, 440–42, 668 N.E.2d 435 (1996). However, the state high court relied on the *Hal-*

*per* line of cases for that portion of the *Gustafson* holding. The Supreme Court of the United States abrogated *Halper* in last December's *Hudson* opinion. *Gustafson* did not find a double jeopardy violation, and to the extent it found the possibility of such a constitutional infirmity that possibility appears more remote in light of *Hudson.*